### In re QUINN.

(Supreme Court, Special Term, Kings County. January 9, 1896.)

POLICE JUSTICES—TERM OF OFFICE—POWER TO TERMINATE.

Laws 1895, c. 601, which abolishes the office of police justice in the city of New York, and provides for the appointment of city magistrates instead, does not violate Const. 1895, art. 6, § 22, providing that justices of the peace and other local officers, in office when the article takes effect, shall hold their offices until the expiration of their respective terms.[1]

---

[1] See, also, People v. Hogan (Sup.) 35 N. Y. Supp. 226; Keating v. Fitch, Id. 641.

Application by John Quinn for habeas corpus.    Granted.

William Sullivan, for the petitioner.
Noah Davis, George Hoadley, and A. L. Pincoffs, opposed.

GAYNOR, J.    John J. Ryan, claiming to be a police justice of
the city of New York, issued a warrant on October 22d last for the
arrest of the petitioner for the abandonment of his wife, and leav-
ing her without adequate support.    The said warrant was indorsed
by a police justice of the city of Brooklyn with a direction that it
might be executed in the city of Brooklyn, and thereupon he was
arrested in that city.    He sues out the writ of habeas corpus, claim-
ing to be illegally deprived of his liberty.    He contends that the
said Ryan was not a police justice of the city of New York when he
issued the warrant, and that therefore it is void.    He bases this
contention upon the act (chapter 601, Laws 1895) which in terms
abolished the office of police justice in the city of New York from
and after June 30, 1895, and provided for the appointment of city
magistrates instead.    On the other hand, it is contended that the
said act is unconstitutional, and therefore void, which would leave
the said Ryan a police justice.

After the case was argued, counsel for the said city magistrates
intervened and made a private suggestion to the court that the pro-
ceeding was collusive, and should not be heard.    Out of regard to
the eminent counsel who had appeared in and argued the case, the
court declined to entertain such a suggestion unless it were sub-
stantiated by affidavits.    Thereafter affidavits were handed in, and,
being submitted to the counsel in the case, affidavits in opposition
were handed in.    The court disavows responsibility for the main
affidavits submitted by the intervening counsel.    They were not ob-
tained under any proceeding or authority of the court.    Instead, pa-
pers purporting to be subpoenas from the district attorney of New
York county were served upon the said Quinn (the petitioner here-
in), and the marshal who arrested him, to appear before the grand
jury of New York county as witnesses "in a criminal action prose-
cuted by the people of the state of New York against John Doe."
Upon presenting themselves they were not taken before the grand
jury, but before an assistant district attorney, who put them through
a rigid examination, in the presence of the said intervening coun-
sel, which was taken down by a stenographer.    Quinn was then
put in the custody of an officer by the direction of the said assist-
ant district attorney, and taken through the streets to the private
office of the said intervening counsel, to sign his examination after
the stenographer should have written it out.    No charge or war-
rant was pending against Quinn, and no official or officer had the
right to detain him, or take him through the streets, nor does it
appear that any criminal action concerning the matter was pending
before the grand jury at all.    The subpoenas mention a criminal ac-
tion against John Doe, viz. some one whose name was not known.
Moreover, testimony given before the grand jury is made secret by
law.    I regret that it was thought that evidence obtained in this

way could find favor with any court. The straining of the machinery of the criminal law, whether to get convictions or for any other purpose, is a dangerous evil. Immediate results may be so obtained, but they do not stand the test of either just opinion or review upon appeal. As to the so-called examination of the marshal, obtained in the way I have stated, it is not sworn to at all.

Coming to the merits of the case, and the question of law involved, I am of opinion that the said statute abolishing the office of police justice is valid. Concededly, before the constitution of 1894 was adopted, the legislature had full power over the tenure of police justices in New York city. It was able to shorten it, or abolish the offices altogether. But it is claimed that section 22 of the judiciary article of the said constitution put the terms of office of the then existing police justices beyond the power of the legislature. It is as follows:

"Justices of the peace and other local judicial officers provided for in sections 17 and 18, in office when this article takes effect, shall hold their offices until the expiration of their respective terms."

Reference to the history and terminology of prior constitutions shows that this provision was adopted only out of caution, lest a question might arise whether the general effect of the revision might not be to oust such judicial officers from their offices. It grew out of that overcaution common in constitutional and statutory revision. It was not meant to take away the power of the legislature over the tenure of such police justices. That would produce the strange result of giving such immunity to the then incumbents only; and upon the expiration of their terms, those of their successors would again be at the pleasure of the legislature. I see no reason for such an interregnum of legislative power. I cannot find any intention in the constitutional convention to deal with such incumbents with such strange favor and tenderness. The reference to the terms of the said police justices by the words in the said section of the constitution, viz. "until the expiration of their respective terms," was to their terms as they then were, or as they might thereafter be abridged by the legislature.

The petitioner is discharged.